(90 Misc. Rep. 338)

WALKOF v. FOX et al.

(Supreme Court, Appellate Term, First Department.  May 11, 1915.)

1. PRINCIPAL AND AGENT ⬳77—LIABILITY OF PRINCIPAL—LOSS TO AGENT.

A principal is liable to his agent for any loss which the agent incurs while performing acts within the scope of his agency, but is not for the amount of a judgment against the agent, until the judgment is paid or satisfied.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. § 77; Dec. Dig. ⬳77.]

2. PRINCIPAL AND AGENT ⬳77—LIABILITY OF PRINCIPAL TO AGENT FOR LOSS.

An agent importing goods into the United States for his principal may not compel the principal to pay the duties due to the United States, for, though the amount of the liability is certain, it does not follow that the agent will be forced to pay the duties, and, until payment, there is no obligation on the principal to reimburse the agent.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. § 77; Dec. Dig. ⬳77.]

3. BANKRUPTCY ⬳151—TRUSTEE IN BANKRUPTCY—IMPLIED CONTRACT—ENFORCEMENT.

A trustee in bankruptcy, suing to enforce an implied contract of the bankrupt, has no greater rights than the bankrupt would have if he were the nominal plaintiff.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 193, 239; Dec. Dig. ⬳151.]

4. BANKRUPTCY ⬳349—CLAIMS OF FEDERAL GOVERNMENT—PRIORITY.

The claims of the United States against an agent importing goods for his principal for the duties imposed has priority over the claims of all other creditors of the agent becoming bankrupt, and the government need not file its claim, but the trustee failing to·pay it after notice is personally liable.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 533; Dec. Dig. ⬳349.]

5. BANKRUPTCY ⬳145—CLAIMS OF FEDERAL GOVERNMENT—PRIORITY.

Where an agent, importing goods for his principal, became a bankrupt, and the United States filed its claim for the duties imposed, the estate suffered an actual loss, for which the trustee in bankruptcy could recover from the principal, though the duties had not been paid, provided any property came into the hands of the trustee.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 205, 230–232, 234; Dec. Dig. ⬳145.]

6. BANKRUPTCY ⬳303—PROPERTY IN HANDS OF TRUSTEE—EVIDENCE.

Under the Bankruptcy Law and rules, the fact that property came into the hands of a trustee in bankruptcy cannot be inferred from the appointment of a trustee.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 458–462; Dec. Dig. ⬳303.]

Appeal from City Court of New York, Trial Term.

Action by Nathaniel Walkof, as trustee in Bankruptcy of the International Forwarding Company, bankrupt, against Hugh C. Fox and others.  From a judgment for plaintiff, defendants appeal.  Reversed, and new trial ordered.

Argued March term, 1915, before LEHMAN, HENDRICK, and COHALAN, JJ.

William C. Rosenberg, of New York City, for appellants.

Blau, Zalkin & Cohen, of New York City (Moses Cohen, of New York City, of counsel), for respondent.

LEHMAN, J. The defendant appeals from a judgment made after a trial before a judge without a jury. The parties are agreed that all the findings of fact are correct, and the appeal is based squarely upon a single question of law which would necessarily determine the conclusion based upon the findings of fact.

It appears that the plaintiff is the trustee in bankruptcy of the International Forwarding Company. This company, acting as duly authorized agents of the defendants, imported, at various times, certain goods for the defendants. The United States government levied duties upon these goods, and the bankrupt gave the defendants notices of the importations and the amounts of duties due to the United States and duly called upon these defendants to make payments thereof. The defendants failed to make such payments. The goods were thereafter sold for nonpayment of duties. The sums realized upon such sales were insufficient to pay the duties, and the United States government has demanded payment of the deficit from the bankrupt. Thereafter the government filed a claim in bankruptcy for the amount of the deficit.

[1, 2] It is the defendants' claim that they are liable to their agent to indemnify it against loss and not against a liability, even though that liability be fixed; and that the facts show only a liability to the United States government for which they must indemnify the bankrupt or its estate only upon proof that actual loss has resulted from that liability. The law underlying this case seems to me to be well established. The only difficulty arises in the application of that law to the particular case. A principal is undoubtedly liable to his agent for any loss which the agent incurs through the performance of any acts directed by the principal to be performed in his behalf. This rule rests upon a contract which is necessarily ordinarily implied in the relationship of principal and agent. Just as an agreement to pay for work performed for the benefit of another at his request will be implied from the request, so an agreement to pay for any loss properly incurred in and flowing from the performance of such work will also be implied. No agreement to indemnify an agent merely from a legal liability incurred in the performance of that work, but not resulting in actual loss, can, however, be ordinarily inferred. Until actual loss has resulted to the agent from such liability, a payment of the amount of such liability might in many instances result in the enrichment of the agent at the expense of the principal. The courts have therefore refused to permit an agent, in the absence of special circumstances, to recover against his principal the amount of a liability which has even been reduced to judgment until the agent has paid or satisfied the judgment and the liability has been changed to an actual loss. See Brown v. Mechanics' & Traders' Bank, 16 App. Div. 207, 44 N. Y. Supp. 645. The true rule seems to me that a principal impliedly agrees to reimburse the agent for loss, but does not agree to indemnify him against liability.

It follows, from this rule, that the defendants, prior to the bankruptcy, could not have been called upon to pay to their agent the amount for which they had made themselves liable to the government. It is true that the amount of such liability was certain, but it by no means follows that they would ever have been forced to pay that liability. The serious question in the case, however, arises from the interposition of the bankruptcy proceedings.

[3] The trustee in bankruptcy suing to enforce an implied contract of the bankrupt has no greater rights than the bankrupt would have if he were the nominal plaintiff. However, in this case, the bankruptcy proceedings have, in my opinion, injected a new element into the case. The assets of the bankrupt are now segregated for the payment of creditors, and the trustees must see that the bankrupt's estate is not depleted so that payment of the debts of the bankrupt can be made. It follows that any actual loss to the bankrupt estate, by which the creditors of the bankrupt are deprived pro tanto of the fund to which they have a right to look, must, on principle, be regarded as a loss actually suffered by the bankrupt. In other words, since all the assets of the bankrupt are now in the hands of his trustee, a loss to those assets must be regarded as a loss to the bankrupt, as well as to his creditors; and if, in this case, there is proof that the bankrupt estate applicable to the payment of the claims of debtors is depleted, then the trustee in bankruptcy has made out his cause of action.

[4] There is no question in this case that the claim of the government whether it be regarded as a tax or ordinary debt has priority over the claims of all other debtors. Apparently the government need not even file its claim in bankruptcy, but, if the trustee in bankruptcy fails to pay a debt due to the United States or distributes the fund in his hands after notice of such debt, he makes himself personally liable. See Collier on Bankruptcy (10th Ed.) p. 887. In the case of United States v. Barnes (C. C.) 31 Fed. 705, the court said:

"When he has notice of the existence of the debt of the United States, he cannot escape liability for its amount, to the extent of the value of the assets that come into his hands, if he fails to provide for it before making distribution to other creditors. Such is the rigor of the statute that he cannot invoke the judgment of a court of competent jurisdiction directing him to distribute the assets to specified creditors as a justification, when it does not appear that the United States were a party to the proceeding, or that he took proper measures to secure the priority of the United States in the distribution. Field v. U. S., 9 Pet. 182 [9 L. Ed. 94]."

[5, 6] From these considerations it follows that, as soon as the United States filed its claim, the trustee received notice of its debt and could make no distribution of the assets of the bankrupt to the debtors until he set aside sufficient to pay the debt due to the United States. To the extent of this claim, therefore, the bankrupt's estate has now suffered an actual loss, provided any property came into the trustee's hands. Unfortunately there is no finding that any property did come into the trustee's hands, and, upon the argument of the appeal, this fact was not conceded, nor under the Bankruptcy Law and rules can such a fact be inferred from the appointment of a trustee. It follows

that there should be a new trial in order that there may be a finding to this effect.

Judgment reversed, and new trial ordered, with costs to appellant to abide the event. All concur.