ALBERT G. NULSEN v. NATIONAL PIGMENTS & CHEMICAL COMPANY, Appellants.—145 S. W. (2d) 410.

Division One, December 11, 1940.

*Boyle & Priest, George T. Priest* and *Robt. E. Moloney* for defendant-appellant.

*Emmet T. Carter, James E. Garstang, Davis Biggs, Jr.,* and *Harold R. Small* for respondent; *Carter & Small* of counsel.

DALTON, C.—A rehearing was granted in this cause, additional briefs were filed, and the cause has been reargued and reassigned. We adopt the statement in the former opinion as follows:

"This is an action to recover amount paid out on a judgment against plaintiff and for an attorney's fee in the case resulting in the judgment. A jury was waived; judgment, including interest, went for plaintiff for $21,182.48, and defendant appealed.

"The facts, in part stipulated, were these: In effect, plaintiff owned the Nulsen Corporation, Manufacturers, and C. P. DeLore owned the J. C. Finck Mineral Milling Company, and the latter company owned the DeLore-Baryta Company. December 20, 1920, the stockholders of the Nulsen Corporation and the Finck Company entered into a contract to consolidate these two corporations. January 11, 1921, the name of the Nulsen Corporation, Manufacturers, was changed to National Pigments & Chemical Company, defendant here. All did not run smoothly with plaintiff and DeLore, so on July 30, 1921, plaintiff and DeLore entered into an agreement by which plaintiff bought all the interest that DeLore and his associates had in the defendant company. At the time of the deal between plaintiff and DeLore, no stock had been issued by the new company, defendant here, but it was considered that plaintiff bought all the stock in the new company that would have been issued to DeLore and his associates. In effect, plaintiff bought all the properties of the Finck Company and the DeLore-Baryta Company. Plaintiff's case is based on the theory that in dealing with DeLore, he was acting for the defendant, and that he made the purchase for and on behalf of defendant, and that defendant *adopted* his deal with DeLore.

"The contract between plaintiff and DeLore was signed by them only. The consideration was $400,000, payable as follows: $50,000 upon execution of the contract, $100,000 in 60 days, and $25,000 in

90 days. The balance was taken care of by plaintiff's six per cent notes, one for $75,000, due January 10, 1922, and three for $50,000 each, and due, respectively, January 10, 1923, 1924, and 1925.

"Price Waterhouse & Company, accountants, had made an audit of the Finck Company and the DeLore-Baryta Company, and the contract between plaintiff and DeLore, among other things, provided:

" 'The statements of Price, Waterhouse & Company, upon the basis of which this contract has been entered into, show a possible tax liability, on account of back income and excess profits taxes of $35,000.00 on the part of J. C. Finck Mineral Milling Company and the DeLore-Baryta Company. It is mutually agreed between the parties hereto that in the event said liability shall hereafter be established at a greater sum than $35,000.00 and the same shall be paid by Nulsen or his associates or the National Pigments & Chemical Company, then the said DeLore shall, upon demand, pay to said Nulsen one-half of such excess over and above said sum of $35,000.00; and in the event such tax liability shall be determined to be less than said sum of $35,000.00, then the said A. G. Nulsen will, upon the establishment of such fact, pay to the said DeLore one-half of the difference between the amount so determined for said tax liability and the said sum of $35,000.00. This matter is to be determined not later than the date of maturity (January 10, 1925) of the last installment payment hereinbefore provided.'

"At a meeting (September 29, 1921) of the board of directors of defendant, J. K. Nulsen, a son of plaintiff, offered the following resolution which was adopted:

" 'Resolved, by the board of directors of this company, that the deal entered into by Mr. Albert G. Nulsen in behalf of this company with Casper P. DeLore and his associates, by which he secured the relinquishment and surrender by said DeLore and his associates, of all of their right and interest, if any, in this company, be and the same is hereby approved and the officers of this company are hereby authorized and directed to reimburse Mr. Albert G. Nulsen for any amounts of money he may have heretofore paid out on account of said deal, and to execute the notes of this company covering all further payments to be made in connection therewith, or if notes covering such further payments or any of them have already been executed by Mr. Nulsen, then in lieu of the execution of notes, the officers of the company may endorse such notes which have already been executed, in the name of this company. They are further authorized and directed to pay to J. P. Thomy (or to Mr. Albert G. Nulsen if he shall have paid to Mr. Thomy) said sum of $25,000.00 as contemplated in said deal, and to pay to Mr. H. F. Lodge (or to Mr. Albert G. Nulsen if he shall have paid Mr. Lodge) the sum of $6,000.00 as contemplated by said deal, and they are further authorized and directed to pay, as and when they shall become due and

payable all fees of attorneys, accountants and appraisers incident to the abandoned consolidation of said companies, and that the total amount of all of said expenses and disbursements be set up on the books of the company as the purchase price of the property and assets of the J. C. Finck Mineral Milling Company and its subsidiaries.'

"May 14, 1923, plaintiff and his son, J. K., sold (consideration $800,000) to the National Lead Company 'all of the common capital stock' of defendant (according to the audit attached to the contract, first parties on December 31, 1922, owned 6743 shares out of 7500 shares of the common stock of the company), and the sale contract contained this provision:

" 'Parties of the first part (the Nulsens) hereby guarantee that on December 31st, 1922, there were no liabilities of the National Pigments and Chemical Company not shown on the attached audit of Price, Waterhouse & Company, and that if any liabilities of said National Pigments and Chemical Company, other than those shown on said audit of Price, Waterhouse & Company, shall appear, then *parties of the first part hereby assume and agree to pay same; and this agreement is made for the benefit of the National Pigments and Chemical Company as well as the party of the second part hereto* (National Lead Company) and may be enforced by both the National Pigments and Chemical Company and the National Lead Company.' (Italics ours.)

"It turned out that no tax liability was established against either the Finck Company or the DeLore-Baryta Company, as contemplated in the above quoted paragraph of the contract (July 30, 1921) between plaintiff and DeLore, and DeLore, on December 29, 1926, brought suit against plaintiff to recover $17,500. November 26, 1928, plaintiff, in the present cause, gave defendant written notice of the DeLore suit against him, and attached to the notice a copy of the DeLore petition. The notice informed defendant that plaintiff would hold it liable to him for the consequences of the DeLore suit, and asked that defendant come in and defend, but defendant did not do so. Plaintiff resisted the DeLore suit, but the trial resulted in a judgment against him, which he paid (April 11, 1931) and the present cause was filed August 18, 1931, and was tried April 26, 1937.

"Defendant, appellant here, stands, we may say, on three propositions, viz.: (1) That the provision (quoted, supra) of plaintiff's contract of sale to the National Lead Company precludes recovery in this cause; (2) that plaintiff's cause, if any, was barred by the five year statute of limitations; and (3) that the evidence is not sufficient to support the judgment."

The first and third propositions, being inter-related, will be considered together. Does the quoted provision (supra) of the contract of May 14, 1923, between the plaintiff and the National Lead Com-

pany, preclude recovery herein by plaintiff? Defendant contends that its contingent liability, if any, to DeLore by reason of the provision, supra, of the contract of July 30, 1921 (the contract between plaintiff and DeLore which was adopted and approved· by defendant), did not specifically appear in the audit of Price, Waterhouse and Company, dated, December 31, 1922; and that, since such contingent liability did not appear from said audit, the plaintiff, under the provisions of said contract of May 14, 1923, guaranteed that such liability did not exist, and that if it did exist, he would assume and pay it.

The audit of December 31, 1922, refers to the contract of July 30, 1921, between plaintiff and DeLore. It reviews some of the provisions of said contract and recites: "It should be observed here that Albert G. Nulsen in these negotiations acted as the agent of the National Pigments and Chemical Company." The audit further recites that the returns of the J. C. Finck Mineral Milling Company for income taxes are subject to final determination by the Department; and that the reserves for other possible assessments appear to be ample. The balance sheet show $27,057.91 reserved "for federal income taxes of prior years of constituent companies." The contingent liability of defendant to DeLore, depending upon final determination of the amount of said income taxes, does not expressly appear. Plaintiff contends that the reference to the contract, executed by plaintiff as agent of defendant, was sufficient, since defendant had full knowledge of the terms of said contract. Plaintiff further contends that the said contract of May 14, 1923, to which the audit of December 31, 1922, was attached, also provided for a further audit which was made pursuant thereto, and is dated August 31, 1923. This supplemental audit expressly shows the contingent liability of defendant to DeLore.

In our opinion it is unnecessary for us to determine whether or not the contingent liability of defendant to DeLore sufficiently appeared from the audit of December 31, 1922, or whether plaintiff, under the terms of his contract of May 14, 1923, with the National Lead Company, assumed and agreed to pay such liability. The defense here urged by defendant was neither presented to, nor passed upon by the trial court. It may not be presented here. [Thomas v. Scott, 221 Mo. 271, 279, 119 S. W. 1098.]

The petition charged that the contract of July 30, 1921, was entered into between plaintiff and DeLore for the benefit of and on behalf of the defendant; that defendant adopted and approved said contract by appropriate action of its stockholders and directors; that plaintiff was sued by the said DeLore under a provisions of said contract (set out supra), when the defendant failed to pay DeLore the amount due under said provision; that defendant was notified to defend said suit but refused to do so; that plaintiff defended at his own expense; that judgment went against plaintiff; and that plaintiff

had paid the judgment, costs and expenses thereof. Plaintiff sought reimbursement from defendant. Defendant's answer was a general denial and a plea of the Statute of Limitations. There was no plea of estoppel by contract or other affirmative defense.

Pursuant to stipulation, a jury was waived, and the cause was submitted to the court upon the pleadings, exhibits, agreed facts, certain depositions, and a transcript of the testimony and depositions in the prior case between DeLore and plaintiff. Among the exhibits, as a part of the agreed statement of facts, was the contract of May 14, 1923. The depositions show that when said contract was identified and attention was called to the paragraph quoted, supra, and now relied on by defendant, that plaintiff's counsel objected as follows: "I object to reading anything into the record from the contract referred to, because it would be wholly immaterial, irrelevant, and incompetent to prove any of the issues in this case, . . ." The court failed to pass on said objection and the depositions and said contract came into evidence without further objection.

At the close of the case defendant made certain requests for findings of fact and declarations of law. None of said requests were based upon, nor in any manner refer to the contract of May 14, 1923, nor to any provision thereof. The requests refer expressly to the contract of July 30, 1921, the resolution of September 29, 1921, and to the Statute of Limitations. The requested declarations of law are substantially as follows: (1) that if the contract between plaintiff and DeLore was a private agreement between the parties and if the parties did not mutually agree that it was for the benefit of and binding on defendant, plaintiff could not recover; (2) that if after the contract was entered into between plaintiff and DeLore defendant did not by proper corporate action ratify and adopt it, plaintiff could not recover; (3) that if plaintiff did not assign the contract to defendant and defendant did not accept the assignment, plaintiff could not recover; (4) that by the contract between plaintiff and DeLore plaintiff was personally obligated to pay DeLore, and plaintiff could not recover; (5) that if any agreement was entered between plaintiff and defendant by virtue of the action of defendant's directors on September 29, 1921, that such agreement was breached January 10, 1925, and plaintiff's cause was barred by the five-year Statute of Limitations. Defendant's motion for a new trial refers some fifteen times to the contract of July 30, 1921, five times to the Statute of Limitations and presents defendant's position with reference to each, but the contract of May 14, 1923, between plaintiff and the National Lead Company, is not mentioned therein, nor is reference made to any defense based thereon.

Defendant here contends the assignment in defendant's motion for a new trial, i. e., that there was "no evidence to support the

court's verdict and judgment," brings the matter before us on this appeal under the first and third propositions presented above.

Defendant states: "Our position was, has been and still is, that on the undisputed documentary evidence, plaintiff made no case. The question of no case upon the undisputed evidence is always open for review by this court, whether made below or not. The contention that plaintiff made no case on the conceded facts, undisputed, was carried in defendant's motion for a new trial." The trouble with defendant's position is that plaintiff made a case below on plaintiff's theory of defendant's liability, and the proof was sufficient to sustain the trial court's finding. Plaintiff was entitled to recover, unless prevented by some affirmative defense presented to and considered by the trial court.

██ Estoppel by the express terms of a subsequent contract entered into between plaintiff and a third party was an affirmative defense, not pleaded, and upon which no requests for findings of fact or declarations of law were made. No issue with reference to said defense was raised by the pleadings or presented to the trial court and such issue may not be presented here. The case must be considered on appeal upon the same theory upon which it was tried in the court below. Defendant cannot abandon its theory upon the trial and proceed upon another theory in this court upon appeal. [Scanlon v. Kansas City, 325 Mo. 125, 28 S. W. (2d) 84, 90; McMurtrey v. Kopke (Mo.), 250 S. W. 399, 401.] The affirmative defense of estoppel, sought to be presented in this court for the first time, may not be considered.

██ Defendant's contention that plaintiff's cause of action is barred by the five-year Statute of Limitations rests upon the theory that plaintiff's suit is based upon an alleged "assumption contract," as evidenced by the resolution of defendant's board of directors of September 29, 1921. Defendant contends that it breached said contract on January 10, 1925, when it failed to pay DeLore the amount due him under the provision of the contract of July 30, 1921, after the final ascertainment of income taxes. It insists that said contract of July 30, 1921, provided that said liability should be determined not later than the date of maturity of the last installment payment under said contract, to-wit, January 10, 1925, and plaintiff having failed to sue until August 18, 1931, his cause of action is barred by limitations.

Plaintiff's cause of action against defendant, however, is not for breach of any of the terms of the contract of July 30, 1921, nor for breach of any alleged adoption contract of September 29, 1921, under the resolution of defendant's board of directors. As we read the petition, plaintiff's cause of action against the defendant is based upon a breach of duty which the law imposes upon the part of a principal to his agent to indemnify the agent against loss and damage

directly resulting from the good faith execution of the agency. The rule is stated in section 439 of the American Law Institute's Restatement of the Law of Agency as follows: "Unless otherwise agreed, the principal is subject to a duty to an agent, not barred by the illegality of his conduct, to reimburse him for or to exonerate him from: (a) authorized payments made by the agent on behalf of the principal; (b) payments upon contract upon which the agent is authorized to make himself liable, and upon obligations arising from the possession or ownership of things which he is authorized to hold on account of the principal; (c) payments of damages to third persons which he is required to make on account of the authorized performance of an act which constitutes a tort or a breach of contract; (d) expenses of defending actions by third persons brought because of the agent's authorized conduct, such actions being unfounded but not brought in bad faith; and (e) payments resulting in benefit to the principal, made by the agent under such conditions that it would be inequitable for indemnity not to be made."

Section (b) is commented upon as follows: "If the agent undertakes a duty in the authorized performance of his agency, as where he enters into a contract under the terms of which he is a contracting party, becomes a shareholder subject to liability for calls, or acquires ownership of real property subject to taxes, an agreement is inferred that the principal will indemnify him for the amount he is required to pay because of the liability thus incurred." [See, also, 2 Am. Jur. 231, sec. 294; 3 C. J. S. 101, sec. 197; Shearer v. Guardian Trust Company, 136 Mo. App. 229, 233, 116 S. W. 456.]

Although by the contract plaintiff's principal was undisclosed, the evidence is amply sufficient to establish that plaintiff entered into the said contract with DeLore as the agent of defendant, "in behalf of," and for the benefit of defendant, and that defendant adopted and approved said contract, and the trial court so found. Except for the provision for payment to DeLore, contingent upon income tax determination, the defendant performed said contract and paid out in excess of $470,000 in compliance with its terms. No cause of action accrued to plaintiff by reason of defendant's failure to pay DeLore on January 10, 1925, under the terms of said contract of July 30, 1921, and no cause of action accrued to plaintiff under the terms of the resolution of September 29, 1921, on account of such failure. The plaintiff incurred no liability and sustained no loss or damage by reason of defendant's said failure on said date, but when plaintiff was compelled to pay to DeLore the amount of the judgment rendered against him, under the contract which he had executed as the agent of defendant, then the law imposed an obligation upon defendant to reimburse plaintiff and said cause of action accrued to plaintiff as of the date of said payment, to-wit, on April 11, 1931. This cause having been instituted on

August 18, 1931, the same was not barred by the Statute of Limitations. [Section 860, R. S. 1929 (Mo. Stat. Ann. 1136); Shearer v. Guardian Trust Company, supra (136 Mo. App. 229, 233); Walkof v. Fox, 153 N. Y. Supp. 27, 90 Misc. 338, affirmed Walkof v. Fox, 155 N. Y. Supp. 1146, 171 App. Div. 908.]

In the Shearer case, supra, plaintiff sued defendant to recover money alleged to have been paid out for defendant on a judgment rendered against plaintiff on account of a warranty plaintiff made of lands held, sold and deeded by plaintiff as the agent of defendant. When plaintiff was sued by the purchaser on the warranty, defendant was notified to defend, but failed to do so and judgment was rendered against plaintiff. It was held that plaintiff's claim for reimbursement for money paid out on the judgment did not arise until he paid the judgment in the original suit against him.

In view of the conclusions we have reached as above stated, it is unnecessary to consider other assignments of error.

The judgment is affirmed. *Hyde* and *Bradley, CC.,* concur.

PER CURIAM:—The foregoing opinion by DALTON, C., is adopted as the opinion of the court. All the judges concur.