**FULTON**

v.

**CITY OF LOCKWOOD et al.**

No. 43788.

Supreme Court of Missouri.

Division No. 2.

April 12, 1954.

Motion for Rehearing or to Transfer to
Court en Banc Denied June 14, 1954.

2

T. Douglas Moore and Ludwig Meyer, Clayton, for appellant.

Neale, Newman, Bradshaw, Freeman & Neale, Jean Paul Bradshaw, Harry G. Neale, Springfield, for respondents.

BOHLING, Commissioner.

■ This is an action by Edward A. Fulton (plaintiff-appellant) against the City of Lockwood (defendant-respondent), Dade County, Missouri. Plaintiff claimed he was entitled under a contract to $8,800 for engineering services to the city; that $2,500 of said $8,800 had been received; that he had been dismissed without cause by defendant before the project was undertaken, and asked judgment for the balance of his fee, to wit: $6,380. Defendant claimed the execution of the contract had never been lawfully authorized by the city, and in a counterclaim sought the recovery of the $2,500. Judgment was entered against plaintiff on his petition and for defendant in the sum of $2,500 on the counterclaim. Plaintiff has appealed from the judgment against him on his petition and the judgment in favor of defendant on its counterclaim. The amount in dispute exceeds $7,500 and we have jurisdiction of the appeal. Dawson v. Scott, 330 Mo. 185, 49 S.W.2d 87, 88[1].

■ The trial was to the court without a jury. We review the law and the evidence as in suits in equity. Consentino v. Heffelfinger, 360 Mo. 535, 229 S.W.2d 546, 549[1]; Scott v. Kempland, Mo.Sup., 264 S.W.2d 349, 355[10].

The main issue is whether plaintiff's contract is ultra vires and void because its execution on behalf of the city *was never authorized in writing* as required by §§ 79.150 and 432.070, hereinafter quoted. (Statutory references are to RSMo 1949 and V.A.M.S., unless otherwise indicated.)

The City of Lockwood is a city of the fourth class. Dr. T. D. Combs, the mayor, on August 2, 1945, wrote plaintiff, a registered and licensed consulting engineer of St. Louis County, Missouri, stating he would be glad to hear from him if interested in a sanitary sewerage system the city was thinking of constructing.

A reply from plaintiff, under date of August 8, 1945, was received. Plaintiff, experienced in these matters, enclosed a copy of Title V of the War Mobilization and Reconversion Act of 1944, 58 U.S. Stats. 791, § 501, advising that thereunder cities might receive a "grant of cash from

the Federal Works Agency" for the preparation of plans for municipal projects, but that "so far no funds" were available for construction. He also advised that if the project were never constructed, the city was not obligated to repay the grant, stating the loss would be "Uncle Sam's." He enclosed two copies of an application for a Federal grant, suggesting that it be filled out for "100%," and that it state the city expected to raise its portion of the costs by " 'General Obligation Bonds to be voted.' " He stated it is a case of "first come, first served"; and, if his letter met with approval, stated he would proceed upon receipt of an executed "application form" and a map of the city.

Plaintiff enclosed two copies of an engineering contract, which he expected the city to execute if it secured "this preliminary grant and we get started. I am not particular about the city executing this contract right now. After you get your 'offer' of funds from the government is soon enough."

The introductory paragraphs of the contract for the engineering services of plaintiff read in part that " * * * the City of Lockwood, State of Missouri, through regular action of its Mayor and Board of Aldermen, did, upon the 27th day of February, A.D.1946, at a meeting of said Mayor and Board of Aldermen, and by proper legal means, take the necessary action to employ an engineer * * *"; and that " * * * this agreement, made this 27th day of February, A.D.1946, between the City of Lockwood, State of Missouri, Party of the First Part, through its duly constituted officials, empowered by law to enter into contracts, and Edward A. Fulton, Consulting Engineer * * *." It provided that plaintiff receive for his services six percent of the construction cost of the improvement, $1,250 to be paid when funds were received from the Federal Government Agency for city purposes and an additional $1,250 when final plans and specifications were complete and delivered to the city. It is signed "City of Lockwood, Missouri, by T. D. Combs, Mayor. Attest (Seal of City of Lockwood) Ray

W. Abbiatti, City Clerk. Edward A. Fulton." Plaintiff testified most of the contract was the work of the city counselor.

Plaintiff prepared the plans and specifications, reported their completion to the Federal Works Agency in October, 1946, and delivered them to the city. The estimated total cost was $160,000, of which $148,000 was for construction and $2,500 was for plan preparation. He received his first $1,250 in November, 1946.

A search of the journal of the board of aldermen by plaintiff and defendant revealed no minutes of any meeting of the board on February 27, 1946, or any authority for the execution of the contract with plaintiff on behalf of the city. The minutes were kept in longhand on notebook paper and intermittently therein pages had been torn out.

Plaintiff had never examined the journal of the city and had not seen a certified copy of any minutes of the aldermen authorizing the execution of the contract, stating that certified copies were not required by the Federal agency in Missouri. He testified that during 1945 and 1946 he was in Lockwood only on one occasion, the night "we met over there for the purpose of signing the contract," which he thought, but could not testify of his own knowledge, was February 27, 1946. He stated the mayor, city clerk and four aldermen were present. He could not recall the names of the aldermen, except alderman Otto Keran. He "believed" the clerk was taking minutes, and "believed" Mr. Keran, when the discussion was over, made the motion that the contract be entered into. He stated he then executed the contract and saw the mayor and city clerk sign it.

We state the substance of the testimony on this matter on behalf of the city. The city clerk, Ray W. Abbiatti, testified plaintiff met with members of the council with respect to the $2,500 grant from the Federal government for planning the project, and stated the Federal government was contemplating making additional grants

for constructing sewer systems and he could assist the city if the appropriations were made. Plaintiff had prepared an application for a $2,500 grant from the Federal government. A journal entry of May 6, 1946, authorized the mayor to apply therefor. The city received the $2,500 in two installments and paid this money to plaintiff. The city clerk testified that once in a while he tore a sheet out of the journal for something else but had never taken a sheet out of the journal on which any of the records of the city had been recorded; that a sheet had been torn out between the minutes of the meetings of February and March, 1946, but that the sheet did not contain any minutes with respect to plaintiff's contract; that minutes of all the meetings of the aldermen of the city were recorded in the journal and are now there; that there was no meeting of the council on February 27, 1946, and that the minutes contained no authorization for the mayor or the clerk to sign any contract with the plaintiff.

Hugh Gerry testified that if plaintiff were present at but one meeting in 1945 and 1946, he was also present at that meeting, and that there was no paper signed at that meeting. Plaintiff questions Mr. Gerry being an alderman at that time, but the journal shows that he was an alderman and that his term expired in April of 1946.

Plaintiff's first amended petition was filed February 6, 1953. Defendant's first amended answer and counterclaim was filed February 11, 1953. The trial was had on said pleadings on February 11, 1953, both parties answering ready for trial. In presenting his argument that the court's finding and judgment is against the weight of the evidence plaintiff refers to the first paragraph of defendant's original counterclaim as an admission on defendant's part that plaintiff and defendant legally and lawfully entered into the contract sued upon. These pleadings are found in what is designated a "Supplemental Transcript on Appeal." Defendant's original counterclaim was not offered in evidence upon the trial. It is not before us. Kelso v. W. A. Ross Const. Co., 337 Mo. 202, 85 S.W.2d 527, 530[2]; Weir v. Brune, Mo.Sup., 256 S.W.2d 810, 811[2]. Moreover, the "Supplemental Transcript on Appeal" fails to show a compliance with the provisions of § 512.-110, subd. 3, and is not for consideration here.

Section 79.150 provides: "The board of aldermen shall cause to be kept a journal of its proceedings, and the ayes and nays shall be entered on any question at the request of any two members. * * "

Section 432.070 provides: "No county, city, town, village * * * or other municipal corporation shall make any contract, unless * * *; and such contract, including the consideration, shall be in writing and dated when made, and shall be subscribed by the parties thereto, or their agents authorized by law and duly appointed and authorized in writing."

The statute, § 79.150, requiring the board of aldermen to keep a journal evidencing the acts, resolutions and ordinances of the city is mandatory. City of New Franklin ex rel. Lynch-McDonald Const. Co. v. Edwards, Mo.App., 23 S.W. 2d 235, 237[2]; City of Brunswick ex rel. Barkwell v. Scott, 219 Mo.App., 45, 275 S.W. 994, 995[1–3]. The minutes of the journal are the indispensable record of the existence of the acts of a city, as the board of aldermen can only speak through its record. Cases supra; Eureka Fire Hose Mfg. Co. v. City of Portageville, Mo.App., 106 S.W.2d 513, 516. When collateral to the pending proceeding, parol evidence to establish the existence of an ordinance has been considered not admissible. The New Franklin and Brunswick cases, supra; Lebanon Light & Magnetic Water Co. v. City of Lebanon, 163 Mo. 254, 260, 63 S.W. 811, 812.

It has been considered sufficient but necessary under § 432.070, supra, that the authority to execute contracts on behalf of a city "be entered of record upon the minutes of the board of alder-

·men." Board of Public Works of Rolla v. Sho-Me Power Corp., 362 Mo. 730, 244 S.W.2d 55, .60[5]; Austin-Western Road Machinery Co. v. City of New Madrid, Mo.App., 185 S.W.2d 850, 853[7]; Haskins v. City of De Soto, Mo.App., 35 S.W.2d 964, 967[4, 5]. Where, as in the instant case, no record was kept authorizing anyone on behalf of the city to enter into the contract, the court stated the contract or order "was void from the beginning". Eureka Fire Hose Mfg. Co. v. City of Portageville, supra [106 S.W.2d 516]. In Haskins v. City of De Soto, supra, the journal entries showed the adoption of a motion authorizing the mayor to enter into the contract, and generally defined its terms.

State ex rel. William R. Compton Co. v. Walter, 324 Mo. 290, 23 S.W.2d 167, 171[7], was a proceeding in mandamus to compel the secretary of a levee district to record in the record book of the district the minutes of a meeting alleged to have been held by the board. It is there stated: "The rule is well settled that where the statute requires a municipal corporation to keep a record of its corporate acts, such acts, when called in question in a *collateral proceeding*, can be shown only by the records of the corporation; but where, as in this case, the secretary of the board failed to make a record of certain proceedings had by the board, and a *direct proceeding* is brought against him to compel him to make such a record, the best evidence rule is not violated by the introduction of parol evidence to prove what the board actually did * * *." State ex rel. Marcum v. Sappington, Mo.App., 261 S.W.2d 385, 389, 390 [2, 3], followed State ex rel. William R. Compton Co. v. Walter, supra, stating: "Without correcting the minutes to show the written authorization, there is no conceivable way that relator could establish the validity of his contract."

 There being no minute or other record in the journal of the board of aldermen authorizing the execution of the contract on behalf of the city, the collateral proceedings in the instant case seeking to establish, over objections interposed, the required statutory written authority for executing the contract by parol or secondary evidence was insufficient under the above authorities. See also State ex rel. Barkwell v. Trimble, 309 Mo. 546, 274 S.W. 683, 684[1–3]; City of Brunswick ex rel. Barkwell v. Scott, 219 Mo.App. 45, 275 S.W. 994, 995[5, 6].

We have read plaintiff's cases. Bonsack & Pearce, Inc., v. School District, 226 Mo.App. 1238, 49 S.W.2d 1085, 1087, 1088, held parol testimony admissible to supply omitted facts or actions to supplement the written record of a school board that the action taken and things done might fully and truthfully appear. State ex rel School District of Affton v. Smith, 336 Mo. 703, 80 S.W.2d 858, 860, has dictum to like effect. It cites and was by the author of State ex rel. William R. Compton Co. v. Walter, supra, wherein holdings that the existence of an ordinance could not be established by parol or secondary evidence in situations like the instant case are said to correctly state the law, 23 S.W.2d loc. cit. 170[6]. In Crebs v. City of Lebanon, C.C., 98 F. 549, 551, the parties stipulated that the ordinance involved had been "duly passed." In State ex rel. Rice v. Tompkins, 239 Mo.App. 1113, 203 S.W.2d 881 [1–3], no records had been kept between May 11, 1931, and March 7, 1936, and the court was considered vested with a discretion to admit parol or secondary evidence. In the instant case the records were kept and the testimony was that they contained all the entries for the period involved. Neither Scrivner v. American Car & Foundry Co., 330 Mo. 408, 50 S.W.2d 1001, 1008[7, 8], nor Seibert v. Budde, Mo.Sup., 226 S.W. 8, 11[1], involved minutes authorizing an act by a board of aldermen expending public funds.

 The sufficiency of the preliminary proof for the admission of secondary or parol evidence rests in the sound discretion of the trial court. Scrivner v. American Car & Foundry Co., and State ex rel. Rice v. Tompkins, supra. A proper foundation requires proof, first, of an ex-

istence at one time of a journal entry authorizing the execution of the contract; and, second, that it had been lost or destroyed. City of Brunswick ex rel. Barkwell v. Scott and State ex rel. Barkwell v. Trimble, supra. The trial court was liberal in the admission of evidence.

 Plaintiff's contention that the city is estopped from asserting the defense that the execution of the contract was never legally authorized is disallowed. We do not find estoppel pleaded. § 509.090; Nulsen v. National Pigments & Chemical Co., 346 Mo. 1246, 145 S.W.2d 410, 414[3]; Fehlig v. Busch, 165 Mo. 144, 169, 65 S.W. 542, 550. Furthermore, municipalities are not estopped by the unauthorized acts of their officers. Eureka Fire Hose Mfg. Co. v. City of Portageville, Mo.App., 106 S.W. 2d 513, 516[3], a case much like the instant case; Fleshner v. Kansas City, 348 Mo. 978, 156 S.W.2d 705, 707; Donovan v. Kansas City, 352 Mo. 430, 175 S.W.2d 874, 879, 179 S.W.2d 108; Traub v. Buchanan County, 341 Mo. 727, 108 S.W.2d 340, 343.

Plaintiff in his brief states the city sought to show it never had the funds to undertake the sewerage project according to plaintiff's plans and estimate, and that the city's assessed valuation at the time of the contract was $470,000 and it could incur an additional indebtedness in general obligation bonds of only about $50,000 at that time. Plaintiff would avoid this defense on the ground Federal legislation providing for grants to cities for such projects was pending, and statutory enactments were later passed, Laws Mo.1951, p. 638, §§ 250.010 to 250.250, authorizing such projects to be financed by revenue bonds. The stated contention is not well taken.

 Plaintiff testified he knew the city "didn't have any [funds] available." His suit is for six percent of the estimated $148,000 construction cost. It is based upon the city incurring an indebtedness far in excess of any general obligation bonds the city could lawfully issue at that time under the applicable statutory and constitutional provisions so far as we have discovered. RSMo 1939, §§ 7152, 7180, 7368, Sections 95.405, 95.410, 95.115 to 95.135, 95.160, RSMo 1949, V.A.M.S.; V.A.M.S. Mo.Const.1875, Art. X, §§ 12, 12a, Mo. Const.1945, Art. VI, § 26(a) to 26(f). Under said provisions municipalities may not spend or contract to spend, become indebted, in an amount exceeding the income and revenue provided for the calendar year involved, plus any unencumbered balances from previous years; are forbidden to anticipate the general revenues of subsequent years, and the permissible additional general obligation bonds must be authorized by the required two-thirds vote of the qualified electors. Sager v. City of Stanberry, 336 Mo. 213, 78 S.W.2d 431, 435[2, 4, 5]; Grand River Township v. Cooke Sales and Service, Inc., Mo.Sup., 267 S.W. 2d 322. The contract contemplated action by the city in excess of its powers, was ultra vires and void ab initio. It is sound to rule the validity of the contract by the laws in effect at the time of its execution. Laclede Power & Light Co. v. City of St. Louis, 353 Mo. 67, 182 S.W.2d 70, 73[7]; Steinbrenner v. City of St. Joseph, 285 Mo. 318, 226 S.W. 890, 892(III).

Plaintiff says the "record is devoid of evidence in support of the counterclaim." The city charged in its counterclaim that certain of its officials had paid plaintiff a total of $2,500 in connection with the sewerage system project, and that said payments were without authorization of law because the city had never entered into a contract with plaintiff for the payment of said sum. It is admitted that the city officials paid and plaintiff received the $2,500.

 The funds were public funds. Public officials discharging duties with respect thereto are not dealing with their own. All persons are charged with knowledge of the laws enacted for the protection of public property and are required to take notice thereof. Public officials act in regard to public funds in a trust capacity as servants of the public. Their acts beyond the scope of their authority are, and are

**8**

known to be, unauthorized, do not bind their principal, and their mistakes are their own and not the mistakes of their sovereign. The protection of the public and the declared public policy requires public officials to comply with mandatory statutory provisions, and such requirements may not be avoided by a compliance only when the official sees fit to comply. Public records are available for inspection and certification to those dealing with public officials. The situation differs from a controversy between private citizens involving the principle that one may do what he will with his own. Authorities hereinbefore mentioned are to the effect that plaintiff's contract was void from the beginning and could not be ratified. Eureka Fire Hose Mfg. Co. v. City of Portageville, Mo.App., 106 S.W.2d 512, 516[1, 2], citing cases, and approved in Fleshner v. Kansas City, 348 Mo. 978, 156 S.W.2d 706, 707[3]. The instant contract is not defective because of some irregularity or some omission which might be supplied in the instant proceedings by parol or secondary evidence to fully show the action taken. Under the instant record the execution of a contract by the mayor and city clerk with plaintiff was never authorized by the board of aldermen. The evidence established that the cost of the project under plaintiff's plans and specifications was prohibitive. Riley v. City of Rock Port, Mo.App., 165 S.W.2d 880, 889[12–15], the only case involving public funds cited by plaintiff, does not establish error. The case presented a contested fact issue, which was supported by evidence pro and con. The following sustain the judgment. Lamar Township v. City of Lamar, 261 Mo. 171, 187 et seq., 169 S.W. 12, 15, 16; State v. Weatherby, 344 Mo. 848, 129 S.W.2d 887, 890[2–10]; Coleman v. Kansas City, 348 Mo. 916, 156 S.W.2d 644, 649[12, 15]; Kansas City v. Halvorson, 352 Mo. 280, 177 S.W.2d 495, 497[2].

The judgment is affirmed.

WESTHUES and BARRETT, CC., concur.

PER CURIAM.

The foregoing opinion by BOHLING, C., is adopted as the opinion of the court.

All concur.

On Motion for Rehearing or Transfer to Court en Banc

PER CURIAM.

Plaintiff has filed a motion for rehearing or, in the alternative, for transfer to Court en Banc.

Of the several contentions presented, we think the only one that need be considered is the contention that the opinion is in conflict with Bride v. City of Slater, Mo., 263 S.W.2d 22, 28, wherein it was held the city could not recover the money voluntarily paid for fuel oil accepted and used by the city under a contract which was void because it did not meet the mandatory requirements of § 432.070 (quoted in the opinion), requiring the consideration to be in writing. The holding was limited in express terms to the circumstances of that case. The case at bar differs on the facts in that there is evidence of record that the plans and specifications of the instant plaintiff were discarded because the cost was prohibitive. Futhermore, the instant plaintiff's suit was for six percent of plaintiff's estimated $148,000 construction costs of the sewerage system and the defendant city was not in a position to lawfully finance the construction under the applicable statutory and constitutional provisions. We were mindful of the holding in Bride v. City of Slater, but considered and still consider it distinguishable from the instant case.

The motion for rehearing or, in the alternative, for transfer to Court en Banc is overruled.